UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT CIARPAGLINI, JOSE SOTO,
and WISCONSIN LEGAL ADVOCACY,

                Plaintiffs,

v.                                                                                  Case No. 07-C-75

PETER ERICKSON, et al.

                Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Ciarpaglini is a frequent filer and has three strikes. *See Ciarpaglini v. Saini,* 352 F.3d 328 (7th Cir. 2003). The filing fee has been paid, however, so that does not pose a problem. He and his co-plaintiff, Jose Soto, are proceeding pro se and have filed a complaint under 42 U.S.C. § 1983. They also purport to name "Wisconsin Legal Advocacy" as a plaintiff; according to the complaint this entity (of unknown corporate status) is or was run by plaintiff Ciarpaglini. Both individual plaintiffs are currently incarcerated at the Columbia Correctional Institution.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity, even if the inmate has paid the filing fee. 28 U.S.C. § 1915A(a); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

**I. The Complaint**

The predominant theme of the lengthy complaint is that Ciarpaglini is being oppressed and restricted in his ability to provide legal advice to other prisoners. He has, according to the complaint, been a thorn in the side of the oppressive state government over several years of acting as a jailhouse lawyer for apparently innumerable inmates. Since 2000, various prison staff members have undertaken a series of activities to "blacklist" Ciarpaglini and restrict his activities. In particular, prison staff have issued *ad hoc* rules preventing Ciarpaglini from providing legal assistance to other prisoners and, in February 2006, they issued an order preventing other prisoners from seeking his legal advice. On one occasion, plaintiff's letter to a friend was cited as a violation of this prohibition on legal advice, and plaintiff was punished. (Compl. ¶ 168.) Although plaintiff Soto is cited as one of the prisoners denied access to Ciarpaglini's counsel, the complaint also alleges that no fewer than 75 inmates have sought Ciarpaglini's legal advice notwithstanding the ban on their doing so.

The complaint also alleges that once, when he was released, Ciarpaglini was precluded from engaging in his "dreams and chances at an honorable career in the legal profession" due to a

probation rule prohibiting him from engaging in litigation on behalf of anyone else. (Compl. ¶ 86.) This rule not only restricted his own work with "Wisconsin Legal Advocacy" but also prevented him from working as a paralegal or legal assistant in the community. In a state action challenging the probation rule, a Racine County judge agreed with Ciarpaglini and struck the rule.

In addition, on another occasion, Ciarpaglini's desire to write an article for a nationwide prison publication was thwarted because he was told his article would have to receive the prior approval of prison attorney Kevin Potter, an erstwhile nemesis of the plaintiff. He further alleges that prison staff reads his outgoing legal mail, in violation of his privacy and ability to access the courts. Finally, he alleges that prior to his release from Dodge Correctional, prison staff choked him without provocation, which amounted to cruel and unusual punishment.

He also brings several state law claims. First, the complaint alleges Ciarpaglini was defamed by a prison staffer's false notation that Ciarpaglini liked to throw feces and urine at staff members. He further alleges that the staff's ban on *any* legal advice violates a 1993 settlement agreement in which he had agreed only to cease providing inmates legal advice in actions against the Department of Corrections or its employees. He also claims a 2006 bankruptcy settlement is being breached by the defendants when they inspect his legal mail; he further claims that the agreement was unconscionable and that the agreement was also breached owing to the defendants' mishandling of his funds.

As to plaintiff Soto, the complaint alleges he was retaliated against after filing an administrative complaint against defendant Erickson. The retaliation continued in many forms, among them trumped up charges, administrative confinement and other restrictions. Soto also alleges he was unable to access the courts due to the restrictions placed on communications with Ciarpaglini.

**II. Preliminary Analysis**

The bulk of the complaint alleges that the rules promulgated by the various defendants are unconstitutionally vague and overbroad, inasmuch as they defy clear application and restrict too much activity protected by the First Amendment. It also suggests that Ciarpaglini's own right to act as a jailhouse lawyer is being infringed. On this latter point, the Supreme Court has found no special protections are due a prisoner's speech merely because he is offering legal advice. *Shaw v. Murphy,* 532 U.S. 223, 228 (2001) (noting that it is "indisputable" that inmate law clerks "are sometimes a menace to prison discipline" and that prisoners have an "acknowledged propensity . . . to abuse both the giving and the seeking of [legal] assistance." ) (quoting *Johnson v. Avery,* 393 U.S. 483, 488, 490(1969)). Instead, any restrictions on inmate speech are assessed under the rubric of *Turner v. Safley,* 482 U.S. 78 (1987), in which the question is whether the restrictions serve a legitimate penological interest. Thus, to the extent the complaint challenges the prison's rules on inmate communications, and how those restrictions impact the plaintiffs, such claims will be addressed under *Turner*. Most of the rest of the complaint asserts viable claims for retaliation or other actions in violation of the First or Eighth Amendments. As for the plaintiff's state law claims, I cannot say at the screening stage that they have no merit.

Other parts of the complaint, however, such as the second claim, appear to assert the rights of other*,* unnamed, inmates who may be restricted in their access to the courts due to the prison rules barring communications with the plaintiff. Although in some cases such a claim might legitimately be brought by one plaintiff on behalf of others not before the court, here there is no indication other than speculation that any nonparty inmates' access to the courts was affected. *Goff v. Nix,* 113 F.3d 887, 890 (8th Cir. 1997). Indeed, according to the complaint inmates still seek out Ciarpaglini's advice, apparently uninhibited by the prison's directive. (Compl. ¶ 82.) Although the complaint

4

recites the indisputable fact that there are a large number of inmates who are uneducated and inexperienced with the court system, it does not cite any examples of other inmates who are in such straits that precluding communication with Ciarpaglini *ipso facto* renders them unable to access the courts on their own.  Accordingly, claim two, which is founded in the rights of *other* inmates, is dismissed.  *Pilkey v. Lappin,* 2006 WL 1843098, *6 (D. N.J. 2006) ("Plaintiff's 'jailhouse lawyer' claim raised on behalf of other inmates is dismissed for lack of standing.")

Finally, the complaint states no viable cause of action on behalf of "Wisconsin Legal Advocacy."  Thus, even assuming any of the plaintiffs could represent this entity in court, any claims brought on its behalf are dismissed.

### III. Conclusion

Thus, **IT IS ORDERED** that because plaintiffs have set forth cognizable claims, the case will proceed, except that claim two and any claims purportedly brought on behalf of Wisconsin Legal Advocacy are **DISMISSED**.

**THEREFORE, IT IS FURTHER ORDERED** that plaintiffs shall serve each defendant pursuant to Fed. R. Civ. P. 4 with the complaint, a waiver of service form and/or summons, and this order.  The clerk of court is directed to provide the pro se plaintiff with instructions on how to effect service.

**IT IS ORDERED** that because this screening of the complaint has reduced plaintiffs' time for service, plaintiff is granted an extension of time for service to 120 days from the date of this order.  *See* Fed. R. Civ. P. 4(m).

**IT IS ALSO ORDERED** that copies of this order be sent to Corey Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiffs are hereby notified that, from now on, they are required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Plaintiffs should also retain a personal copy of each document. If plaintiffs do not have access to a photocopy machine, plaintiffs may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiffs are further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the clerk of court's office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Nothing in this order or in § 1915A precludes a defendant from moving to dismiss any claim identified in this order or potentially existing in the complaint if the defendant disagrees with my analysis or believes I have overlooked something during my screening.

Dated this   6th   day of February, 2007.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge