UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE SOTO, ROBERT CIARPAGLINI, and
REINIER RAVESTEIJN,

        Plaintiffs,

  v.                                    Case No. 07-C-75

PETER ERICKSON, et al.,

        Defendants.

**ORDER**

Before me presently is the defendants' motion for partial summary judgment, as well as plaintiff Ciarpaglini's motion for a preliminary injunction. Plaintiffs also seek leave to amend the complaint and leave to serve additional interrogatories on the defendants. Finally, they have moved to strike the defendants' motion for partial summary judgment. The motion for partial summary judgment will be granted, and the motion to amend the complaint will be granted in part. The other motions will be denied.

In their summary judgment motion, defendants seek dismissal without prejudice of claims brought by Robert Ciarpaglini. Defendants contend, and Ciarpaglini concedes, that in 1993 he signed a settlement agreement with the State of Wisconsin in which he agreed "not to file any lawsuits, except for claims of severe physical harm, against the State of Wisconsin, its employees or agents, while Mr. Ciarpaglini is in the custody of the Wisconsin Department of Corrections." (Docket No. 23, Ex. A ¶ 3.) Because Ciarpaglini is in state custody and because this lawsuit does not allege "severe physical harm," defendants believe the claims Ciarpaglini has brought must be dismissed.

The settlement agreement was proposed by Ciarpaglini himself in 1993. Ciarpaglini has been a frequent litigator for quite some time, and at the time of the settlement he had some six lawsuits pending in federal court. (Since then, he has ended up on the "three strikes" list for having filed three or more frivolous or unmeritorious lawsuits in federal court. *See* 28 U.S.C. § 1915(g)). He also apparently had some 350 inmate complaints in the works at that time. In numerous letters to Eileen Pray, a state DOJ attorney, he proposed that he would drop the six federal lawsuits and would agree not to file "any further lawsuits against the state so long as he is confined to the DOC, excluding actions concerning his immediate wellbeing." (Docket No. 59, Ex. 102.) He would also drop the inmate complaints and would agree not to seek *in forma pauperis* status in future actions. In addition, he promised not to aid other inmates in their lawsuits against the DOC. In return, he wanted $400 and an expungement of his debts to the state. (He later wavered on the $400, changing the amount he sought several times, and ultimately agreed (though it is not perfectly clear) to accept debt expungement by itself.) In addition to financial motivations, he stated a desire to get out of the "litigation business" and do something more productive with his time. (*Id.* at 14.)

Before the settlement was executed, Eileen Pray met with Ciarpaglini and had him read the document and explain his understanding of its terms. (A court reporter recorded the meeting.) On the critical clause presently at issue, he stated that he believed its scope prevented him filing lawsuits except those alleging excessive force. (*Id.,* Exhibit 104 at 6.) Pray noted that he must also allege some "physical injuries of a severe nature on that excessive force." Ciarpaglini agreed: "Yeah. That's fine. That's fine." (*Id.*) Pray then asked for his understanding of the entire clause, to which he responded:

2

> Well, I've agreed not to file any other lawsuits except those dealing with severe physical harm; examples being, being denied access to the court, being denied postage or free legal supplies, staff read my mail or legal documents. Other than dealing with physical harm, I'm not going to file any further lawsuits against the State.

(*Id.* at 7.)

With respect to another clause of the agreement preventing him from acting as a jailhouse lawyer, Ciarpaglini confirmed that he understood he would be "putting [his] pen down" and would not conduct any further "jailhouse lawyering" for other inmates. "Basically I'm just going to withdraw from the practice of jailhouse lawyering." (*Id.* at 8-9.)

As described in the screening order, the bulk of the present case alleges that the defendants have impermissibly restricted Ciarpaglini's efforts to access the courts and provide jailhouse lawyering services to other inmates. Ciarpaglini raises several disjointed arguments in opposition to the defendants' claim that the settlement agreement precludes his bringing this case.[1] His most strenuous objection to dismissal is that this lawsuit *does* allege severe physical harm. He states that his amended complaint (assuming leave to file it would be granted) asserts several instances of severe physical harm. Review of the proposed amended complaint, however, reveals a transparent attempt to clothe Ciarpaglini's First Amendment and contract claims in the magic words of "severe physical harm." For instance, Ciarpaglini alleges the defendants' actions in restricting his jailhouse lawyering have "upset Ciarpaglini so that it caused him severe physical harm." (Proposed Am. Compl., ¶ 58.) Similar attempts abound. (*See id.*, ¶¶ 106, 155, 163, 171, 178, 198, 212, 229.) Ciarpaglini should be fully aware that his thinly disguised effort to circumvent his settlement

---

[1] Plaintiff has filed numerous "supplemental affidavits" as well as letters, motions and briefs asserting various positions opposing the defendants' motion.

3

agreement must fail. First, the agreement talks of "claims of severe physical harm," and the numerous conclusory attempts to link the defendants' alleged First Amendment violations or breaches of contract with such harm exceed the bounds of plausibility, even under an indulgent reading. All of his claims involve abstract rights, not severe pain. Even accepting his assertion that the defendants' actions induced panic attacks does not transform his claims into "claims" based on "severe physical harm." Instead, his claims arise under the First Amendment and also involve theories of breach of contract. It is conceivable that physical injury could factor into any damages to which he might otherwise be entitled, but that does not mean they are "claims" of severe physical harm (e.g., deliberate indifference to a serious medical need, guard brutality, or other more typical grounds for Eighth Amendment relief).

Indeed, Ciarpaglini must recognize that if his efforts to recast his claims succeeded, settlement agreements of the sort he signed would have no teeth whatsoever: the loophole he attempts to create would swallow the agreement entirely, because severe physical harm could be alleged in *any* case, no matter the actual nature or substance of the claim. Accordingly, with one exception noted below, I do not find that the amended complaint sets forth any plausible claims based on severe physical harm.

Ciarpaglini also asserts that the settlement agreement is either too vague to be enforced or unconscionable. Neither is true. First, the agreement clearly sets forth his intent to forego filing lawsuits against state officials while in the state's custody. There are no provisos or any other hints that the agreement sets forth anything but the true intent of the parties, and there is no indication that

4

the language was limited to Ciarpaglini's then-current stint in custody.² Nor is the settlement agreement unscionable. Criminal defendants facing the loss of physical liberty often waive constitutional rights and make calculated decisions to bargain with the state. Sometimes these bargains involve giving up the right to file a civil rights lawsuit. "In many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Town of Newton v. Rumery,* 480 U.S. 386, 394 (1987). If a criminal defendant facing loss of liberty may relinquish key constitutional rights, it follows that one already in the state's custody may do so as well. This is especially true given the facts of this case. The settlement agreement contains the most basic escape clause allowing Ciarpaglini to file lawsuits alleging severe physical harm. In fact, this clause is even broader than the federal statute's exception to the three strikes rule, which allows lawsuits brought by an otherwise-barred inmate if there is "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Moreover, the settlement agreement was Ciarpaglini's own idea and was heavily negotiated by him, which leaves no question about coercion or the voluntariness of the release. In short, there is nothing about the agreement that suggests unfairness or unconscionability.³

---

²Again, Ciarpaglini's extensive elaboration of his own legal wisdom undercuts any notion that he was somehow unaware of the consequences of the settlement agreement.

³Presumably there are limits to the scope of a settlement agreement like the kind at issue here. It is not as though the state is taking unseemly advantage of the plaintiff because the plaintiff cannot sue. The settlement agreement does not prevent lawsuits, but arises only after a court is apprised of the nature of the plaintiff's claims. Thus, it is not as though a settlement like this one will somehow shield the state from judicial review of its actions. It would be another thing if the state, on the basis of a settlement agreement, took it upon itself to seize the plaintiff's filings before they even reached the court.

5

Finally, Ciarpaglini attempts to circumvent the settlement agreement by way of a motion for a preliminary injunction. That motion, however, seeks the very relief sought in the complaint – namely, an end to the defendants' alleged practice of precluding Ciarpaglini from discussing cases with other inmates. Accordingly, for the same reasons just noted, the motion will be denied as to Ciarpaglini.

To the extent the motion seeks relief on behalf of the other two plaintiffs, it is also denied. There is no indication of urgency of the sort that would justify preliminary relief; nor is there any showing of a likelihood of success. The claims the other two plaintiffs allege (at least as they relate to the motion for a preliminary injunction) are limited to an argument that they are unable to access the courts because of the prison's restrictions on communicating with Ciarpaglini. The presumption underlying these claims is twofold: first, that the two other plaintiffs are unable on their own to meaningfully communicate with the court; and second, that Ciarpaglini is the only viable means of litigation that these inmates have at their disposal. These claims have not been briefed, but they seem exceedingly weak. Ultimately their argument presumes that inmates possess an inviolable right to the jailhouse lawyer of their choice, and that is simply untrue. *Gometz v. Henman,* 807 F.2d 113, 116 (7th Cir. 1986) ("even if Silverstein . . . is entitled to the assistance of inmate writ-writers once his lawyers depart the scene, Silverstein is not entitled to the assistance of a particular lay assistant. There are undoubtedly many jailhouse lawyers in Atlanta, and that prison has a substantial law library.") Accordingly, the motion for a preliminary injunction will be denied. *Cf. Bear v. Kautzky,* 305 F.3d 802, 805 (8th Cir. 2002) (preliminary relief granted where prison imposed "a total ban on all inmate legal communications, and [prisoners] presented evidence that they have no satisfactory alternative way of obtaining needed legal assistance to pursue specific post-conviction claims.")

That leaves the question of the motion to amend the complaint, which involves the larger question of what claims should remain in this lawsuit. The motion to amend (which is unopposed) will be granted, although most of it suffers from the same problems noted above. Roughly ninety percent of the amended complaint involves the same claims that are barred by the settlement agreement. All that is left is Ciarpaglini's claim for excessive force (¶¶ 200-205), which the defendants concede alleges severe physical harm and thus gets around the settlement agreement. The trouble is that the claim has not been exhausted, which means it will be dismissed as well. Ciarpaglini protests that he could not exhaust the claim because he was released on the same day the claim arose and the inmate complaint system is for inmates only. But, as the defendants note, in January 2006 he became an inmate again soon after his release. He thus could have filed an inmate grievance at that time.[4] Accordingly, all of Ciarpaglini's claims are dismissed without prejudice.

The other claims are as follows. Ravesteijn has a claim for inadequate medical care of his urologic condition (Am. Compl., ¶ 279), as well as a claim (noted earlier) that he has been unable to access the courts due to the restrictions placed on his communications with Ciarpaglini. (*Id.* ¶

---

[4]The fact that such a complaint might have been rejected as untimely does not matter. The regulation allows an exception to the standard 30-day time limit for "good cause." Wis. Admin. Code § DOC 310.09(6). As the defendants note, one's release from prison (which would prevent the filing of an inmate grievance) would likely be deemed good cause. This is a crucial step in allowing the state to have the first crack at resolving complaints. *Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004) ("At the time of these events, Illinois permitted a filing after six months when the prisoner had good cause . . . The official handling the grievance must have found good cause; . . . when a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.")

7

277.) Soto brings a due process claim for retaliation and trumped-up grievances as well as an Eighth Amendment claim for inhumane conditions of confinement. (Am. Compl. ¶ 247-252; 256.) He also asserts First Amendment claims based the deprivation of newspapers. (*Id.* ¶ 258.) Presumably Soto is also attempting to make some kind of access-to-the-courts claim based on the inability to communicate with Ciarpaglini, but it is not specified in the complaint. Defendants may limit their response to the amended complaint to these paragraphs.

Thus far, defendants have sought partial summary judgment only as to Ciarpaglini's claims. That motion, as discussed above, will be granted. But because Ciarpaglini's claims constituted the bulk of the case, we are left with several claims having little in common – for example, Ravesteijn's Eighth Amendment claim has no perceivable relation to Soto's claims. The only nexus is Ravesteijn's and Soto's claims that they have been unable to access the courts due to restrictions on their communications with Ciarpaglini. At this somewhat preliminary stage, I will merely dismiss Ciarpaglini's claims and allow the case to proceed. However, my ruling does not preclude the defendants from moving for dismissal of some or all claims on the basis that the claims and parties are not properly joined in this action.

In conclusion, the defendants' motion for partial summary judgment (doc. #18) is **GRANTED**; all claims brought by plaintiff Robert Ciarpaglini are **DISMISSED** without prejudice. The motion to amend the complaint (doc. #51) is **GRANTED** in part, and the proposed amended complaint will be deemed the amended complaint of plaintiffs Soto and Ravesteijn and limited to the claims identified above. The motion for a preliminary injunction (doc. #64) is **DENIED**. The motion for leave to serve additional interrogatories (doc. #49) and the motion to strike (doc. #81) are **DENIED**.

8

In addition, having decided defendants' motion for partial summary judgment and significantly narrowed the remaining claims, the order staying discovery in the matter (doc. #75) will now be **VACATED**. Defendants need not respond to plaintiffs' outstanding discovery requests, and any new discovery requests must be tailored to those claims that remain outstanding. All discovery on the remaining claims shall be completed by August 15, 2007, and dispositive motions must be filed on or before September 15, 2007.

**SO ORDERED** this   11th   day of May, 2007.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge