UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE SOTO,

        Plaintiff,

v.                                         Case No. 07-C-75

PETER ERICKSON, et al.,

        Defendants.

**DECISION AND ORDER**

Plaintiff has filed a motion for reconsideration of this court's May 9 decision granting summary judgment to the defendants. The motion will be denied.

The plaintiff cites several documents that he asserts support his claim that defendant Erickson retaliated against him. As these documents were not addressed in this court's May 9 opinion, I will address them here. To recall, the charge is that Erickson had it in for the plaintiff and exaggerated the severity of the fight in which the plaintiff was involved. In particular, the plaintiff had been written up for a relatively serious fight, but at some point in the ongoing review process Erickson believed that the plaintiff had actually stabbed another inmate, which was not true (or at least not documented). This exaggeration allegedly resulted in increased discipline for the plaintiff.

The evidence the plaintiff points to are a series of segregation review forms filled out while the plaintiff was in seg status following the fighting incident. (Dkt. # 146, Ex. B-E.) Erickson's recommendation generally agreed with the recommendation of the program supervisor, Lt. Natzke, and on the monthly reports both Natzke and Erickson made brief notations along with their check-

the-box recommendations. For instance, on the February 24, 2003 review form Natzke suggested that plaintiff should stay in seg: "serious offense to [sic] soon to promote to next step." (Dkt. # 146, Ex. B.) Erickson wrote on the same form, "continue step #1 lack of time served very serious assault."

The next review form on March 24 has Lt. Natzke recommending promotion to step 2 in seg. Erickson agreed, noting "promote to step 2 appropriate behavior in seg very serious incident – stabbing." (*Id.*, Ex. C.) This appears to be the first reference to "stabbing." The next review, on April 21, reveals that plaintiff had a poor attitude and failed to cooperate with staff. He was "generally disrespectful to supervisors while making rounds." (*Id.*, Ex. D.) This resulted in Lt. Natzke recommending that plaintiff continue on step 2, a recommendation that was affirmed by a Captain Schultz (who signed the form in lieu of Erickson). On May 19, Lt. Natzke noted positive adjustment in seg and recommended plaintiff be released to the general population. (*Id.*, Ex. E.) Erickson disagreed, although he recommended promoting plaintiff from step 2 to step 3. He noted "promote to step 3 very serious incident stabbed another inmate uncooperative with staff in seg lack of time served for seriousness of incident." (*Id.*) The same held true for the June review, although this time Erickson recommended continued detention in seg given that the plaintiff was being reviewed for administrative (nonpunitive) segregation. (*Id.*, Ex. F.)

It is unclear why at some point Erickson began remarking that the plaintiff had stabbed another inmate. It could have simply been a mistake, although the fact that the other inmate involved in the fight required stitches might have played a role. (*Id.*, Ex. C.) Plaintiff views the insertion of a false stabbing charge into the record as a nefarious effort to retaliate against him, but in reality the evidence is far too flimsy to support such a claim: a few stray references to "stabbing"

2

in the segregation review reports does not warrant an inference that Erickson was retaliating. First, there is no indication that the outcome of the plaintiff's discipline turned on that single word in his reports – the fact is that he was written up for a very serious fight which resulted in the other man receiving several stitches. Moreover, Soto had been uncooperative to staff, and Erickson cited that as a reason for keeping him in segregation. (*Id.*, Ex. E.) In other words, it was not necessary to "manufacture" some sort of stabbing-related evidence to keep the plaintiff in segregation because the seriousness of the fight in which the plaintiff was actually involved was substantial, and in fact Erickson obviously had the power to recommend keeping the plaintiff in seg *without* making any reference to stabbing.

Second, the allegation of retaliation makes almost no sense. If Erickson had determined to retaliate against the plaintiff by exaggerating the nature of his fight, why would he not include the reference to "stabbing" earlier in the review process instead of waiting? As it is, the stabbing reference only leaks into the administrative record in a March 24, 2003 review, and that review *affirms* the conclusion of the lower reviewing officer. Erickson's earlier review had mentioned serious fighting – without any reference to stabbing – as the reason for continued segregation. Third, if Erickson had intended to retaliate, why did he support the plaintiff's promotion through the steps in segregation?

Finally, the plaintiff has not identified any particular protected activity he engaged in that Erickson was retaliating against. The "stabbing" reference arises on March 24 – several months after the fighting incident itself – and there is no link between this remark in the record and any protected activity the plaintiff conducted. In fact, the plaintiff now claims that Erickson was retaliating against him because on May 30 the plaintiff filed a grievance against Erickson for the

3

very "stabbing" remarks at issue in this case. In other words, Erickson allegedly retaliated against Soto because Soto claimed Erickson retaliated against Soto – a self-fulfilling prophecy that makes no sense. Erickson's "stabbing" references began in March, and plaintiff's grievance did not occur until May. Clearly Erickson believed plaintiff was a dangerous person, but that does not mean he was retaliating against the plaintiff's exercise of any protected rights.

In sum, the few stray references to stabbing in the record do not support an inference that Erickson intentionally used that term as a means of retaliating against the plaintiff. Just as importantly, the plaintiff's claim would require exactly the sort of micromanaging of prisons that courts are especially ill-equipped to conduct. As I noted in the decision on summary judgment, the plaintiff's claim is highly speculative – the claim being that Erickson "exaggerated" an incident rather than concocted one – and it would be an impossible task to sort through his theories of retaliation without second-guessing what were no-doubt reasonable reasons for the punishment imposed. Ruling on the severity of the punishment imposed and the various gradations and conclusions reached by different prison staff members is not the proper role of a federal court, particularly when the allegedly retaliatory animus underlying the whole chain of events remains a shrouded mystery.

The rest of the motion for reconsideration does not bear additional discussion, except to note that the plaintiff's motion further underscores the absence of retaliatory motive. In particular, the plaintiff seems to be under the view that "spite" is a substitute for retaliatory animus. Specifically, he says the jury – rather than the court – should decide whether Erickson acted out of spite or not. (Dkt. # 176 at 7.) But retaliation is not a question of "spite." Presumably in the prison system there are countless guards who hold extremely unfavorable views of certain inmates, and on a given day

4

their negative opinions might be called spiteful. But it is not unconstitutional to dislike inmates or to take action against those whom one views as particularly troublesome or dangerous. Retaliation is only unconstitutional inasmuch as it is punishment for the inmate's exercise of protected activity. *Pearson v. Welborn,* 471 F.3d 732, 738 (7th Cir. 2006) ("To succeed on his retaliation claim, it was necessary for Pearson to demonstrate that prison officials retaliated against him for exercising a constitutionally protected right.") Purely cruel or malicious treatment might find recourse through some other avenue, but it does not provide a basis for a retaliation claim absent some link to protected activity.

For these reasons, the motion for reconsideration is **DENIED**.

**SO ORDERED** this   9th   day of June, 2008.

                                               s/ William C. Griesbach
                                               William C. Griesbach
                                               United States District Judge